**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 96-30934**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**GEORGE FOSTER, JR.,**

**Defendant-Appellant.**

---

Appeal from the United States District Court
For the Eastern District of Louisiana
(96-CV-234)

---

July 23, 1998

Before REAVLEY, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

George Foster, Jr. ("Foster"), a federal prisoner, appeals pro se the district court's denial of his 28 U.S.C. § 2255 motion, in which he challenges his conviction for using and carrying a firearm in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Foster, who pleaded guilty to this crime, contends that the factual basis for his plea was

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

insufficient.  We affirm the district court's order.

I.

In March 1991, Foster was under close surveillance by federal agents.  On two occasions that month, Foster sold sizable amounts of crack cocaine to undercover officers.  On March 27, the agents received a tip that Foster was heading to Houston to purchase more cocaine.  That day, Foster drove from New Orleans to Houston in a white Chevrolet Impala, accompanied by his son Karren Foster.  A black Lincoln Continental driven by Obidiah Stephenson ("Stephenson") followed Foster.  Upon arriving in Houston, Foster and Stephenson checked into separate hotel rooms.

Early the next day, Foster entered Stephenson's hotel room and left carrying a paper bag which Foster placed in the trunk of his Impala.  Foster and Stephenson, in their respective automobiles, then drove to an apartment in Houston.  Foster and Stephenson entered the apartment together.  Foster subsequently exited the apartment with a package that he placed in the trunk of his car.[2] Foster, accompanied by his son Karren, and Stephenson then began their drive back to New Orleans.

While driving east on I-10, Foster drove his Impala off the road and into a ditch.  Stephenson stopped to assist.  After unsuccessfully attempting to extricate the car, Foster called a tow

---

[2]     Foster's  presentence report indicates that in the apartment the cocaine was packed in coffee grounds for concealment purposes. Foster then placed the package of cocaine in the trunk of his vehicle.

truck for help.  Foster, in the meantime, removed the package from his trunk and gave it to Stephenson, who then drove off.  Once his car was towed from the ditch, Foster and his son drove to a highway rest stop where he rejoined Stephenson.  Karren Foster then took the package from Stephenson's Lincoln and placed it in the trunk of his father's car.  Foster and Stephenson then resumed their drive back to New Orleans.

On I-10 in Louisiana, a state trooper stopped Foster's Impala for a traffic violation.  The vehicle was being driven by Karren Foster, with his father as passenger.  With consent from Foster, the officer searched the trunk of the car and discovered the package, which contained roughly 780 grams of cocaine.  The officer also discovered a loaded .32 caliber revolver in the trunk.  Foster later told the agents that he had traveled to Houston to purchase cocaine.  He also admitted to owning the Impala and the handgun.

Foster was charged in a five-count criminal indictment. Counts one and two charged Foster with intentionally distributing cocaine in violation of 21 U.S.C. § 841(a)(1).  Count three charged Foster with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.  Count four charged Foster with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  Count five charged Foster with using and carrying a firearm during and in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).  The predicate offense for the gun charge in count five was the drug offense alleged in count four.  On July 18, 1991, Foster pleaded

3

guilty to all five counts and was sentenced to concurrent sentences of 60 months on the drug trafficking charges. Foster received a 60-month consecutive sentence on the gun charge.

On January 28, 1996, Foster filed a pro se § 2255 motion, arguing that the facts presented by the government at his plea hearing did not sufficiently support his § 924(c)(1) conviction under count five. In particular, Foster asserted that the factual basis did not establish that he "used" the firearm as that term was interpreted in *Bailey v. United States*, 516 U.S. 137 (1995). In response, the government argued that Foster's conviction under § 924(c) was valid nonetheless because the factual basis for his guilty plea sufficiently supported his conviction under the "carry" prong of § 924(c). The magistrate judge agreed and recommended that Foster's § 2255 motion be denied. Foster objected, arguing that "carry" requires a showing that the firearm is accessible to the defendant. Foster also argued that "carry," like "use," requires some active employment not satisfied by the act of mere storage. The district court accepted the magistrate judge's recommendation and denied Foster's § 2255 motion. Foster appeals that decision.[3]

---

[3]     Foster filed his § 2255 motion on January 28, 1996. At that time, decisions of this Court applied the 28 U.S.C. § 2253(c) certificate of appealability requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to cases filed prior to AEDPA's April 26, 1996 effective date.

On June 4, 1997, this Court remanded this action to the district court for a determination of whether a certificate of appealability ("COA") should issue to Foster. On June 30, 1997, the district court refused to grant a COA. Since that order, however, the Supreme Court issued its decision in *Lindh v. Murphy*,

II.

Foster's guilty plea was taken under Rule 11 of the Federal Rules of Criminal Procedure.[4] FED. R. CRIM. P. 11. Typically, a guilty plea waives all non-jurisdictional defects in the proceedings below. *United States v. Miramontez*, 995 F.2d 56, 60 (5th Cir. 1993). However, "where intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense, application of this rule is misplaced." *United States v. Andrade*, 83 F.3d 729, 731 (5th Cir. 1996). Due to the Supreme Court's recent clarification of § 924(c) in *Bailey*, we may properly hear Foster's appeal.[5] *Id.*

_____

117 S. Ct. 2059 (1997). There, the Supreme Court held that the new provisions of Chapter 153 of Title 28 of the United States Code, which includes the § 2253(c) certificate of appealability requirement, are generally not applicable to cases filed before AEDPA's effective date. *Id*. at 2068. Accordingly, because Foster filed this action in January 1996, well before AEDPA's effective date, he is not required to obtain a COA before filing his appeal.

[4] Rule 11 provides, in pertinent part:

> Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following: (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term. . . .

FED. R. CRIM. P. 11(c).

[5] Foster never filed a direct appeal raising the instant challenge to his guilty plea. Normally, that failure would constitute procedural default precluding Foster from bringing this collateral action absent a showing of either "cause and actual prejudice, . . . or that he is actually innocent." *Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998) (quotations and

A district court cannot accept a guilty plea unless there is a sufficient factual basis for the plea. *United States v. Carter*, 117 F.3d 262, 264 (5th Cir. 1997). The factual basis must be evident in the record and must be sufficiently specific to allow the court to determine whether the defendant's conduct was within the ambit of the statute's prohibitions. *Id.* The district court's acceptance of a guilty plea is a finding of fact we review for clear error. *Id.*

III.

Section 924(c)(1) is violated when a defendant "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1). In *Bailey*, the Supreme Court held that a conviction for "use" under § 924(c)(1) requires sufficient evidence to "show active employment of the firearm" by the defendant. *Bailey*, 516 U.S. at 144. The Court defined "use" as "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at 148. Clearly, under *Bailey* the facts of this case do not support a "use" conviction under § 924(c). Moreover, by failing to address this issue on appeal, or below, the government has conceded this point. Foster, however, pleaded guilty to an indictment stating that he "used" and "carried" a

---

citations omitted). In this case, however, the government never raised procedural default as a bar to Foster's § 2255 motion. Accordingly, the government has waived that defense. *Mayo v. Lynaugh*, 893 F.2d 683, 686 (5th Cir. 1990).

6

firearm.  Thus, Foster's conviction may be left intact if the "carry" aspect of § 924(c) is satisfied.  *United States v. Thompson*, 122 F.3d 304, 306-07 (5th Cir. 1997).

In *Muscarello v. United States*, 118 S. Ct. 1911 (1998), the Supreme Court considered whether the word "carries," as set forth in § 924(c), is limited to the carrying of firearms on the person. The Court found that the ordinary meaning of the word, as well as the legislative purpose behind § 924(c), counseled against such a narrow reading of the statute.  *Id.* at 1919.  The Court held that "a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car," carries that weapon in violation of § 924(c).  *Id.* at 1913-14.

On appeal, Foster asserts that he did not carry the revolver found in the trunk of his Impala because he did not have immediate access to that weapon.  Foster's argument is foreclosed by *Muscarello*.  There is no question that under *Muscarello's* broad interpretation of "carry," Foster carried the .32 caliber handgun found in the trunk of his car.

IV.

For the foregoing reasons, we affirm the district court's denial of Foster's § 2255 motion.

7